394 P.2d 410

CITY OF MESA, a municipal corporation, City of Phoenix, a municipal corporation, City of Tucson, a municipal corporation, and Town of Holbrook, a municipal corporation, Petitioners,

v.

Clyde KILLINGSWORTH, Superintendent of Motor Vehicle Division, State of Arizona, Wilbur F. Asbury, Bryant Whiting, Arthur F. Black, Stanley W. Coon and K. William Holbrook, Members of the State Highway Commission, County of Maricopa, a municipal corporation, County of Navajo, a municipal corporation, and County of Pima, a municipal corporation, Respondents,

and

County of Pinal, a municipal corporation, and County of Coconino, a municipal corporation, Intervenors.

No. 8160.

Supreme Court of Arizona.

En Banc.

July 21, 1964.

Rehearing Denied Sept. 22, 1964.

J. LaMar Shelley, City Atty., Mesa, Merle L. Hanson, City Atty., Phoenix, Calvin Webster, City Atty., Tucson, and W. Dean Nutting, Town Atty., Holbrook, for petitioners.

Robert W. Pickrell, Atty. Gen., Dale R. Shumway, Asst. Atty. Gen., for respondents.

Lewis, Roca, Scoville, Beauchamp & Linton, by Edwin Beauchamp, Phoenix, for Maricopa County.

Edwin R. Powell, Holbrook, by William A. Niese, Phoenix, for Navajo County.

Hillock & Hillock, by Robert N. Hillock, Tucson, for Pima County.

Irving Vincent, Florence, for Pinal County.

Robert W. Warden, Flagstaff, for Coconino County.

STRUCKMEYER, Justice.

This is an original action in mandamus seeking to compel respondents to collect and apportion certain excise taxes in the manner petitioners believe the applicable law requires. We issued an alternative writ of mandamus, A.R.S.Const. Art. 6, § 5, as amended, allowing the parties an appropriate period of time to file, briefs.

The controversy arises out of the 1963 amendments to the Motor Vehicle Fuel Tax, Article 1, Ch. 9 of Title 28, of the Arizona Revised Statutes, § 28–1501 et seq., and the Use Fuel Tax, Article 2, Ch. 9 of Title 28, A.R.S. § 28–1551 et seq. Both articles, as amended, require the payment of six cents a gallon for fuels consumed by motor vehicles upon the public highways. The critical difference as it effects this litigation concerns the distribution of the taxes after they have been received by the State Superintendent of Motor Vehicle Division.

Under the "Motor Vehicle Fuel Tax" as amended in 1963, A.R.S. § 28–1501.01, all of the increase of one cent per gallon is paid to the superintendent who is directed to pay one hundred per cent thereof to the several county treasurers. The county treasurers shall retain twenty per cent for the counties and give the balance of eighty per cent to the incorporated cities within the counties in proportion to their population. Under the "Use Fuel Tax," seven-tenths of the tax collected is directed to be paid by the superintendent to the state treasurer and three-tenths to the county

treasurers. The Superintendent of Motor Vehicle Division has been collecting the tax on "diesel fuels" under the "Use Fuel Tax" article and the definition contained therein, A.R.S. § 28–1551. It is the petitioners' position that taxes collected by the Superintendent of Motor Vehicle Division for "diesel fuels" should be collected pursuant to the "Motor Vehicle Fuel Tax" article as amended so that eighty per cent collected under the 1963 amendment can be paid to the incorporated cities.

By Title 28, Article 1, Ch. 9, A.R.S. § 28–1501, distributors, as defined in Title 28, Article 1, Ch. 1, A.R.S. § 28–113, shall pay to the State a license tax of six cents for each gallon of motor vehicle fuel. Motor vehicle fuel is defined in A.R.S. § 28–126:

> " 'Motor vehicle fuel' means any inflammable liquid other than kerosene, by whatever name known or sold, which is used or usable in motor vehicles, either alone or when mixed, blended or compounded, for the propulsion thereof upon the highways."

This statute has been substantially in its present form since 1931, Laws of 1931, 1st Special Session, Ch. 16, § 2. By the "Use Fuel Tax" article, every user of "fuel" shall remit to the State the amount of the license tax due. Fuel is defined by A.R.S. § 28–1551, subsection 2:

> " 'Fuel' means any combustible gas or liquid, by whatever name known or sold, of a kind used in internal combustion engines for the generation of power to propel a motor vehicle on the highways, *except such fuel as is subject to or exempted from the tax imposed by article 1 of this chapter*, and except the fuel exempted in § 28–1517." (Emphasis supplied.)

As can be seen, A.R.S. § 28–126 defines "motor vehicle fuel" as any inflammable liquid other than kerosene useable in motor vehicles and A.R.S. § 28–1551 defines "fuel" as any combustible gas or liquid used in internal combustible engines to propel a motor vehicle on highways. Fuel subject to or exempted from the tax imposed by § 28–126 is not taxed by § 28–1551. Kerosene is exempted from the tax imposed by § 28–126. Combustible gases such as butane and propane are subject to § 28–1551 and not to § 28–126.

It is petitioners' position that an examination of the two definitions demonstrates complete lack of ambiguity and that consequently the statutes are not open to construction but must be enforced as written. All conceded that § 28–126, defining motor vehicle fuel, imposes a tax on gasoline. Petitioners argue that § 28–126, defining motor vehicle fuel, does not distinguish between gasoline and diesel fuels and that, therefore, by the plain language of the section, both are embraced within it.

Petitioners are correct in their assertion that only where the statute is ambiguous are courts at liberty to construe the language used. State v. Borah, 51 Ariz. 318, 76 P.2d 757, 115 A.L.R. 254. The rule has also been stated to be that where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941; Palmcroft Development Co. v. City of Phoenix, 46 Ariz. 200, 49 P.2d 626, 103 A.L.R. 802, modified on other grounds, 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811; Automatic Registering Mach. Co. v. Pima County, 36 Ariz. 367, 285 P. 1034. Where the statute is unambiguous, the courts will only apply the language used and not interpret, for the statute speaks for itself.

We think the principle sought to be applied by petitioners is inapplicable. There is not here a single statute whose language is clear and needs no interpretation but two statutes whose language when considered together gives rise to the uncertainty of legislative intent. The language of the two enactments appears, in part, to cover the same subject matter for by § 28–126 motor vehicle fuel is inflammable liquid useable in motor vehicles for propulsion upon highways, while by § 28–1551 fuel is a combustible liquid used to propel motor vehicles on highways. Combustible and inflammable are synonymous. Webster's Third New International Dictionary. The definitions as they concern themselves with combustible liquids and inflammable liquids manifestly mean the same thing in the ordinary understanding of the English language. But plainly they cannot have been intended to cover the same objects of taxation because § 28–1551 excludes the fuels subject to the tax in § 28–126. If it were intended that all liquids were to be taxed under § 28–126, then there are no liquids to be taxed under § 28–1551. An ambiguity is regarded as existing where the legislature has enacted two or more statutes which appear to be inconsistent. State v. Bethlehem Steel Corporation, 7 W.W.Harr. 441, 37 Del. 441, 184 A. 873.

Moreover, if by A.R.S. § 28–126 the legislature meant to include all liquids used in motor vehicles on highways other than kerosene, then the language used in A.R.S. § 28–1551, taxing liquids used in internal combustible engines to propel motor vehicles on highways, is surplusage having no useful purpose and therefore meaningless. Uncertainty as to the meaning of the statute may arise from the fact that giving a literal interpretation to the words would lead to such an absurd consequence as to compel a conviction that this could not have been intended by the legislature. Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120. The presumption is that the

legislature did not intend to do a futile thing by including a provision which is not operative. Kelly v. Bastedo, 70 Ariz. 371, 220 P.2d 1069. The two articles are inconsistent and hence ambiguous and therefore require extrinsic aids to their interpretation.

■ It is the cardinal rule that the legislative *will* is the all important and controlling factor, State v. Borah, supra, and hence construction or interpretation is for the purpose of ascertaining and declaring the intention of the legislature, State ex rel. Sullivan v. Burns, 51 Ariz. 384, 77 P.2d 215. All rules for the interpretation of statutes have for their sole objective the discovery of legislative intent. City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A.L.R. 828.

■ Many arguments, subtle and refined, bearing an air of plausibility, have been advanced by the parties to this litigation, but we think that the historical development of this legislation points decisively to the proper conclusion. Legislative and historical background of the statutory enactments shedding light on meaning and intent may be and often have been considered by this Court. Frye v. South Phoenix Volunteer Fire Co., 71 Ariz. 163, 224 P.2d 651; Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808; Southern Pac. Co. v. Maricopa County, 56 Ariz. 247, 107 P.2d 212; Garrison v. Luke, supra.

The first fuel tax of any kind in Arizona was enacted in 1921, Laws of 1921, Ch. 116. This statute, by its express terms, imposed a tax of one cent per gallon on gasoline. In the year 1927, comprehensive motor vehicle legislation was enacted. In it was incorporated the enactment of 1921, Laws of 1927, Ch. 2, subch. 3, Fourth Special Session. It may be noted that the legislature then entitled the gasoline tax as "Motor Vehicle Fuel Tax." The "Use Fuel Tax" article was enacted in 1941, Laws of 1941, Ch. 109. The legislature could not have been other than aware of the "Motor Vehicle Fuel Tax" article since it was re-enacted at the same time.

■ We take judicial notice that virtually all motor vehicles prior to the 1930's were propelled by gasoline and hence that was the sole taxable motor vehicle fuel. In the early 1930's engines were developed which could burn fuels other than gasoline, such as diesel oils and butane and propane gases and the like. These latter were to some extent used to propel motor vehicles on the highways, but they were and are today to a large extent consumed in non-highway uses; e. g., farming and construction. Prior to the 1941 adoption of the "Use Fuel Tax" article, the State Highway Department required distributors delivering diesel oils and stove oils within the State to report that fact and if delivered into the fuel tank of another vehicle to pay to the

State the required motor vehicle tax. General Order No. 36, October 25, 1937.

■■■ Respondents' exhibit No. 2, in part being the Tax Administration News, August, 1962, Vol. 26, No. 8, establishes that a dilemma was created by the use of these fuels, called special fuels, for if they were taxed in the same manner as gasoline, it would be unfair to non-highway users unless the revenues thereby collected were refunded. Undoubtedly for this reason the legislature did not exact the tax from the distributor but from the user. Considering the timing of the enactment of the two tax articles, first, that originally in 1921 the legislature could not have considered diesel oils as taxable and, second, that by 1941 diesels and other fuels had come into popular use, we are convinced that the "Use Fuel Tax" article was enacted to cover special fuels not categorically described or sold as gasoline.

■■■ Upon enactment of the "Use Fuel Tax" article, the State Highway Department, in 1941, issued General Order No. 42. Paragraph two of General Order No. 42 specifically stated that "Use Fuel" meant "any combustible gas or liquid (except gasoline which has already been taxed) by whatever name known or sold of a kind used to propel motor vehicles over the highways of this state. This means that diesel fuel, stove, oil, butane, etc., will be taxed as 'use fuel' when used in motor vehicles in

this state." From that time to this, the tax on diesel oils has been collected under the "Use Fuel Tax" article. This Court has held, on numerous occasions, that while administrative interpretation is not binding where long continued and in cases of ambiguity we will acquiesce therein. Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R.2d 949.

We are reinforced in our conclusions:

■■■ *First,* as pointed out, the definition of "Motor Vehicle Fuel," A.R.S. § 28–126, was re-adopted at the time the "Use Fuel Tax" article was enacted. By A.R.S. § 28–1553, a part of the "Use Fuel Tax" article, that tax was imposed "in lieu of the tax imposed by article 1", the "Motor Vehicle Fuel Tax" article. The phrase "in lieu of" means "in place of". This implies that the "Use Fuel Tax" was adopted in place of the "Motor Vehicle Fuel Tax" and that the legislators had some liquid, or liquids, in mind which the "Use Fuel Tax" would reach in place of the liquid, or liquids, taxed in the "Motor Vehicle Fuel Tax" article. Were we to ignore the "in lieu" provision of § 28–1553, we would be failing to give effect to all the language of the statute. Such would conflict with the principle we have repeatedly stated would be a guide to the court—that language of a statute will not be ignored where all parts can be reconciled. State Board of Technical Registration v. McDaniel, 84 Ariz. 223,

326 P.2d 348; Maricopa County v. Douglas, 69 Ariz. 35, 208 P.2d 646; State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562.

 *Second,* after this controversy originated the Twenty-sixth Legislature this year, in its Second Regular Session, enacted House Bill No. 258, Chapter 47, amending § 28–126 and defining motor vehicle fuel as "all products commonly or commercially known or sold as gasoline." It also amended § 28–1551 by defining diesel fuel as a fuel taxable under the "Use Fuel Tax" article. The legislature has now clearly expressed its intention consistent with the construction which we believe should be placed on the former statutes. An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act. General Petroleum Corporation of California v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364.

Respondents raised as a defense to this action that the petition was defective for failure to join all fourteen counties of the State of Arizona as indispensable parties under Rule 19, Rules of Civil Procedure, 16 A.R.S. On December 10th, prior to any hearings in this matter, we ordered additional parties joined as respondents, being the counties within which the petitioning municipalities existed; namely, Maricopa, Pima and Navajo. We denied respondents second defense, being of the view that the counties before the Court "fairly insure the adequate representation" of all counties within the State. Rule 23(a), Rules of Civil Procedure, 16 A.R.S.

For the foregoing reasons, the alternative writ of mandamus heretofore issued is ordered quashed.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and JENNINGS, JJ., concur.