IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL LYNN COOK, *Plaintiff/Appellant*,

*v.*

CHARLES L. RYAN, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0234
FILED 6-18-2020

Appeal from the Superior Court in Maricopa County
No. LC2018-000335-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Michael Lynn Cook, Florence
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael E. Gottfried, Daniel P. Schaack
*Counsel for Defendant/Appellee Charles L. Ryan*

---

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

**¶1** Appellant Michael Lynn Cook ("Cook") challenges the superior court's denial of relief in a special action brought against Appellees Charles L. Ryan, et al. ("Appellees") stemming from Cook's complaints arising from multiple prison disciplinary proceedings. Because the disciplinary proceedings satisfied the requirements of due process, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2** Cook is an inmate incarcerated at the Arizona Department of Corrections ("DOC"). On December 13, 2017, Cook was charged with threatening and intimidation in disciplinary case 17-L23-1182.[1] On December 18, 2017, Cook was accused of participating in a riot, which led to DOC filing a recommendation for maximum custody placement. On December 25, 2017, Cook was charged with possession of a weapon, in disciplinary case 17-LO9-0113.

**¶3** On January 5, 2018, a disciplinary hearing was held for case 17-LO9-0113. Cook was found guilty, which resulted in a loss of 180 earned release credits, among other consequences. Following another hearing on that same date, Cook was approved for maximum custody placement due to his alleged riot participation.

**¶4** On February 21, 2018, Cook was accused of tearing out eighty-one pages of a library book in disciplinary case 18-LO9-0001. A hearing was held on March 29, 2018, and Cook was found guilty of the charges, the consequences included loss of sixty earned release credits.

**¶5** On May 3, 2018, Cook was directed by officers to move to a new housing location, and he allegedly refused to obey multiple verbal

---

[1] Based on the information available in the record, as well as Cook's arguments in his briefs, it is unclear what resulted from these charges.

directives, resulting in disciplinary case 18-A21-0349. A hearing was held on May 18, 2018, and Cook was found guilty of disobeying verbal orders, and the consequences included a loss of thirty earned release credits.

¶6         On May 24, 2018, Cook was placed on dinner restriction and given a cold dinner on a paper tray. As an officer handed Cook his dinner through the door's food trap, Cook allegedly held the officer's arm in the food trap to prevent the officer from closing it in protest of his dinner restriction and to ensure a sergeant came to address the situation. The officer claimed Cook attempted to assault him. The officer called in for assistance, and after the responding sergeants arrived, Cook was allegedly given multiple directives to submit to restraints, and he refused. Cook was charged with disorderly conduct, and a hearing was held on June 15, 2018, in disciplinary case 18-A21-0364. Cook was found guilty, which resulted in a penalty of the loss of thirty earned release credits.

¶7         Cook filed internal appeals in cases 18-LO9-0001, 18-A21-0349, and 18-A21-0364, but they were denied. Cook filed a complaint with the superior court seeking special action relief. The court accepted special action jurisdiction but denied relief. Cook filed a timely notice of appeal, and after entry of a final judgment pursuant to Arizona Rule of Civil Procedure ("Rule") 54(c), we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

¶8         A superior court may exercise its discretion to consider a complaint arising from inmate disciplinary decisions as a special action. *Rose v. Dep't of Corr.*, 167 Ariz. 116, 121 (App. 1991). To prevail on a special action complaint, a plaintiff must demonstrate:

> (1) "the defendant has failed to exercise discretion which he
> has a duty to exercise; or to perform a duty required by law
> as to which he has no discretion";

> (2) "the defendant has proceeded or is threatening to proceed
> without or in excess of jurisdiction or legal authority"; or

> (3) "a determination was arbitrary and capricious or an abuse
> of discretion."

Ariz. R.P. Spec. Act. 3. We conduct a bifurcated review on appeal from a superior court ruling on a special action, determining first whether the superior court accepted jurisdiction. *Stapert v. Ariz. Bd. of Psychologist*

*Exam'rs*, 210 Ariz. 177, 182, ¶ 22 (App. 2005). If it did, we review the merits of the decision. *Id.* The superior court did accept jurisdiction in this case; accordingly, we review its decision on the merits for an abuse of discretion but review questions of law *de novo*. *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5 (App. 2005).

**¶9** Cook argues he was denied due process throughout his disciplinary proceedings for cases 17-L23-1182, 17-LO9-0113, 18-LO9-0001, 18-A21-0349, and 18-A21-0364, as well as the maximum custody placement proceedings. Although prisoners retain some due process rights, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). If a prison disciplinary hearing may result in the loss of earned release credits, an inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). Due process further requires that "some evidence" must support a finding of guilt in a prison disciplinary hearing. *Id.* at 455. We do not decide the credibility of witnesses, weigh the evidence, or reexamine the full record, and instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

I.      Case 17-L23-1182 (threatening and intimidating)

**¶10** Cook argues he was denied due process throughout the disciplinary proceedings for this case, but Cook also alleges this case was later dismissed.[2] If so, Cook cannot demonstrate he suffered any prejudice

---

[2]     The superior court found Cook failed to attach any documentation regarding case 17-L23-1182, and so his claims regarding this proceeding were "wholly unsupported." On appeal and in his brief, Cook cites to a document he attaches in his appendix that he claims proves the disciplinary proceedings were dismissed. The document Cook cites to is a Result of Disciplinary Hearing for case 17-L23-1182, in which Cook was found guilty

due to any deficiencies with DOC providing advance notice, his ability to call witnesses and present evidence at the hearing, or his access to the appeals process. "[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991); *cf. Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010) (stating that due process error is not reversible absent prejudice).

**¶11**     Cook further argues this proceeding resulted in the loss of 120 earned release credits, and he argues the credits must be restored and information from this case must be deleted from Cook's institutional files due to the dismissal. Cook did not raise these arguments with the superior court. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (finding that we generally do not consider issues raised for the first time on appeal); *see also Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987) (noting arguments raised for the first time on appeal, including constitutional challenges, may be waived). Regardless, Cook has not provided any evidence, nor does the record show, that any penalties assessed against Cook still stand after the alleged dismissal of the case. Additionally, the Appellees' inability to locate any documentation regarding this case number would seem to suggest that the case was deleted from Cook's institutional files.

**¶12**     Finally, Cook contends that although this case was ultimately dismissed, the proceeding was still used to place him in maximum custody in violation of his due process rights. This argument was also not raised with the superior court and, accordingly, was waived. *See Englert*, 199 Ariz. at 26, ¶ 13; *Hawkins*, 152 Ariz. at 503. Cook's placement in maximum custody stems from his involvement in a riot, a completely independent set of events. The superior court did not err when it denied relief.

II.     Advance Written Notice

**¶13**     Cook argues he was not given the constitutionally required twenty-four hours advance written notice for cases 17-LO9-0113, 18-LO9-0001, and the maximum custody proceedings. Cook contends the lack of notice prevented him from collecting evidence and preparing a defense for the hearings. *See Wolff*, 418 U.S. at 564.

---

of the charges. No other documentation for this disciplinary proceeding has been provided.

¶14        In case 18-LO9-0001, Cook was notified of the charges on March 2, 2018, and the hearing was held on March 29, 2018; this exceeds the required twenty-four hours' notice.

¶15        While Cook claims he was not made aware of the charges for case 17-LO9-0113 until sixty-one days after the January 5, 2018 hearing, Cook concedes he was given a disciplinary report and written notice on January 4, 2018. In fact, on January 4, 2018, Cook made requests for witness statements in anticipation of the hearing. The purpose of providing an inmate with a copy of the charges is "to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Regardless of the exact amount of notice Cook was given, Cook was notified at least the day before the hearing. Moreover, he has failed to demonstrate how he may have been prejudiced by allegedly not receiving the full twenty-four hours' notice. *See Powell*, 953 F.2d at 750; *cf. Yakima Compost Co.*, 224 Ariz. at 598, ¶ 12.

¶16        Finally, while Cook argues he was not afforded due process and given advance notice of his maximum custody placement proceedings, a prisoner has no constitutional right to enjoy a particular security classification. *See Sandin v. Conner*, 515 U.S. 472, 485-86 (1995) (finding that disciplinary confinement of inmates "in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law" and so it does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *see also Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (holding there is no due process protected liberty interest in a prisoner's re-classification and transfer decision). Nevertheless, contrary to Cook's claims, Cook was given advance written notice of the proceedings. The Notice of Hearing form was signed by Cook on December 22, 2017, and the hearing was then held on January 5, 2018. The court did not err in denying Cook relief.

III.    Calling Witnesses and Presenting Evidence

¶17        Cook argues he was prevented from calling witnesses and presenting evidence at the hearings for cases 18-LO9-0001, 17-LO9-0113, 18-A21-0349, and 18-A21-0364. However, Cook does not have an unrestricted right to call witnesses and present evidence. Allowing him to do so would have the "obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff*, 418 U.S. at 566. Accordingly, "[p]rison officials must have the necessary discretion . . . to limit access to other inmates to collect statements or to compile other

documentary evidence." *Id.* DOC does not allow inmates to force corrections officers and staff to testify live at disciplinary hearings, and instead allows inmates to ask written questions of witnesses. Arizona Department of Corrections Department Order 803-7.9.1 and 7.9.2.

**¶18** Cook further argues that if DOC did not allow him to call witnesses at the hearing, Cook must be given an explanation as to why he was denied the opportunity. It is true that the Supreme Court has recommended that a hearing officer document the reason for excluding a witness, stating that "it would be useful for the [trier] to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. However, nothing in the record indicates Cook was ever denied the opportunity to solicit and use witness statements in cases 17-LO9-0113 and 18-LO9-0001, as Cook contends.

**¶19** Additionally, in case 18-A21-0349, the record shows Cook did use three witness statements for the hearing. DOC noted that two other witness statements were denied because the officers were not present at the hearing and unavailable. In case 18-A21-0364, the record shows that Cook used five witness statements. Only one witness statement was denied, and it was because the correction officer was unavailable and not present at the hearing.

**¶20** Finally, Cook argues he was prevented from presenting evidence in cases 18-A21-0349 and 18-A21-0364, including videotape evidence. Nothing in the record indicates Cook was denied the request to present any video evidence. Cook was present at the hearings, and he had the opportunity to ask questions of witnesses. Cook has failed to prove that his due process rights were violated.

IV.    Evidence to Support Findings

**¶21** Cook argues the charges against him cannot stand because the only evidence supporting the charges was the testimony of correctional officers. Cook argues documentary evidence, physical evidence, and video evidence should have been provided before he could be found guilty. Contrary to Cook's argument, all that is required to uphold the decision of a disciplinary board is "some evidence"; the testimony and/or disciplinary report of a correctional officer is sufficient. *See Hill*, 472 U.S. at 455; *see also McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). The court did not err in denying Cook relief.

V.       Equal Access to Appeals Process

¶22       Cook alleges DOC "deliberately failed" to investigate his appeals for the maximum custody proceedings, and he was denied "equal access" to an available appeals process for the maximum custody proceedings and case 17-LO9-0113.  First, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

¶23       Second, Cook had access to the appeals process within the DOC, as evidenced by the maximum custody placement appeal documents he included as part of the instant appeal.  Cook provides no evidence other than his unsupported contentions that DOC failed to appropriately respond to his appeal.  Additionally, aside from his broad allegations, Cook fails to develop any equal access claim or explain how he was barred from "equal access" to the appeals process for case 17-LO9-0113.  As such, we decline to further address these arguments.  The superior court did not err.

VI.       Impartial Decisionmaker

¶24       Cook contends he was denied a hearing in front of an impartial decisionmaker.  However, the Supreme Court has held that correctional officers and staff are sufficiently impartial to conduct disciplinary hearings.  *See Wolff*, 418 U.S. at 570-71.  The court did not err in denying Cook relief.

VII.       Bad Faith and Retaliation

¶25       Cook makes various arguments that DOC acted in bad faith and the filing of disciplinary cases was a "deliberate malicious use" of the disciplinary process by DOC in violation of his due process rights.  Cook has failed to explain how DOC's filing of this case was an abuse of process, and he provides no evidence to support these allegations.

¶26       Cook also argues case 18-A21-0349 was filed in retaliation for filing an inmate grievance.  However, Cook fails to provide any evidence to support these contentions.  The mere fact that this case was filed six days after Cook claims to have filed an inmate grievance does not prove that DOC only filed this case as a retaliatory measure.

¶27       Finally, Cook makes various unsupported arguments that he was denied requests for documents from the proceedings and he was placed in maximum custody for the sole purpose of preventing him from attending disciplinary hearings.  Aside from his broad allegations, Cook

again fails to develop any equal access claim or to provide any support for these arguments. As such, we decline to further address these arguments. The superior court did not abuse its discretion in denying relief.

**CONCLUSION**

¶28 For the foregoing reasons, we affirm.

